## UNITED STATES v. SEVENTY-FOUR CASES OF GRAPE JUICE.

(District Court, W. D. New York.   July 15, 1910.)

1. FOOD (§ 24*)—FOOD AND DRUGS ACT—PROCEEDING FOR VIOLATION.

When proceedings for violation of Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187), by adulteration or misbranding, are instituted at the instance of the Department of Agriculture, whether such proceedings are in personam or for a forfeiture of goods under section 10, it would seem that the notice of examination and opportunity to be heard provided for by section 4 are necessary conditions precedent and must be alleged and proved; but under section 5 a district attorney may institute such a proceeding upon complaint of any state health officer or any adequate proof without the action of the agents of the department.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

2. COMMERCE (§ 33*)—INTERSTATE COMMERCE—POWER OF CONGRESS TO REGULATE—FOOD AND DRUGS ACT.

Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187), is within the constitutional power of Congress to regulate interstate commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 33.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Proceeding by the United States for the forfeiture of seventy-four cases of grape juice. On demurrer to libel. Overruled.

John Lord O'Brien, for the United States.

Moot, Sprague, Brownell & Marcy (Adelbert Moot, of counsel), for claimants.

HOLT, District Judge. This is a demurrer to a libel filed to forfeit 74 cases of grape juice on the ground that they were adulterated and misbranded, in violation of the act of June 30, 1906, commonly called the "pure food act." The grounds of demurrer alleged are that the libel fails to allege that notice of the examination of the samples made in or under the direction or supervision of the Bureau of Chemistry in the Department of Agriculture was given to the claimants, and an opportunity to be heard afforded them, as provided in section 4 of the act, and that the act itself is unconstitutional.

This is a proceeding in rem, under section 10 of the act, for the forfeiture of the goods alleged to have been adulterated and misbranded. It has been held in United States v. Fifty Barrels of Whiskey (D. C.) 165 Fed. 966, and United States v. Sixty-Five Cases of Liquid Extracts (D. C.) 170 Fed. 449, and in some other unreported cases, that the provisions of section 4 requiring notice of the examination of the goods by federal officers to be given to the party from whom the samples have been taken, and an opportunity to be afforded such party to be heard, apply to suits in personam to recover penalties under section 5 only, and not to suits in rem to forfeit the goods under section 10. With the highest respect for the eminent judges who have reached this conclusion, it seems to me at least doubtful. Section 5, to which it is admitted that the provisions of section 4 apply, requiring such notice to be given and such opportunity to be heard afforded, does not in terms provide that the prosecutions instituted after such notice has been given and such opportunity to be heard afforded shall be prosecutions in personam only. It provides that it shall be the duty of the district attorney "to cause appropriate proceedings to be commenced and prosecuted * * * for the enforcement of the penalties as in such case herein provided." The word, "herein" here means in any part of the entire act. A statute which provides for the forfeiture of goods for a violation of law imposes a penalty just as much as a statute which provides for a fine for such violation. Moreover, the eleventh section of the act provides, in the case of imported goods, that samples shall be delivered to the Secretary of Agriculture, and that notice shall be given to the owner or consignee who may appear before the Secretary of Agriculture and give testimony, and, "if it appears from the examination of such samples that any article of food or drug * * * is adulterated or misbranded," the said article shall be refused admission, and the Secretary of the Treasury shall cause the destruction of such goods if not exported by the consignee within three months.

If Congress thought it proper to provide that an importer is entitled to a preliminary notice and hearing before his goods can be refused admission and if not exported, destroyed, I cannot see why it did not intend the same protection for a citizen whose goods it is proposed to

forfeit and destroy. But it is unnecessary to decide this question upon this demurrer, for I think it should be overruled on another point. The ground of demurrer under consideration assumes that there can be no prosecution of any kind under the pure food act without such preliminary notice and opportunity to be heard. But this obviously is not so. The fifth section authorizes prosecutions upon the complaint of any state health officer, and, in my opinion, the district attorney can institute such a prosecution, upon any adequate proof, without the action of the agents of the Department of Agriculture. When, however, the officers of the Department of Agriculture first bring the matter before the district attorney, I think that the notice must be given and the opportunity to be heard afforded provided for in section 4 before an indictment can be found. In all such prosecutions therefore the indictment or libel must allege, and the evidence establish, that such notice was given and such opportunity to be heard afforded before the prosecution was instituted. As the libel in this case may have been instituted by the district attorney without the intervention of the agents of the Department of Agriculture, I think the demurrer on the ground under consideration should be overruled.

The point that the pure food act is unconstitutional has been ably argued in the claimants' brief. If it were an original question, the claim that this act is really an attempt to exercise the police power, which resides wholly in the states, would be entitled to careful consideration. But, in my opinion, the underlying principle governing the question has been decided. The Lottery Case, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492, held that an act of Congress prohibiting the transportation in interstate commerce of lottery tickets was constitutional. I can see no difference in principle in the two cases. So the acts providing for the humane treatment of animals transported in interstate commerce, the acts making it a criminal offense to use the United States mails in the prosecution of a fraudulent scheme, or for the transportation of obscene publications, and many similar statutes, all rest on the same basis. Congress having exclusive power to regulate interstate commerce and the postal service, it can prohibit their use for the prosecution of any fundamentally objectionable business. The selling of adulterated or misbranded articles of food, drink, or medicine is as unmitigated an evil as the sale of lottery tickets or counterfeit money or obscene publications. At all events, the pure food act is a beneficial one; many convictions have been had under it in many courts; and a court of first instance should not hold such a statute unconstitutional except upon clear grounds.

The demurrer is overruled, with leave to the claimants to answer within 20 days upon payment of costs.